UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

ERIC DAVID SEALES,                                    Case No.  03-40336

               Plaintiff,

v.                                                    District Judge Paul V. Gadola
                                                      Magistrate Judge R. Steven Whalen

MACOMB COUNTY and FREDERICK
TRUE, JASON STABLEY, TED STABLEY,
ROBERT WHITEHEAD, JIM HILL and
RON GEKIERE, individually and in their
official capacity,

               Defendants.

_____/

## REPORT AND RECOMMENDATION

Before the Court is Defendants Macomb County, Frederick True, Jason Stabley, Ted

Stabley, Jim Hill and Ron Gekiere's Motion for Summary Judgment [Docket #87] and

Defendant Robert Whitehead's Motion for Summary Judgment [Docket #88], which have

been referred for a Report and Recommendation pursuant to 28 U.S.C. §636(b)(1)(B).[1] For

the reasons that follow, I recommend that Jasen Stabley, Ted Stabley, Hill, Gekiere,

Whitehead's motion for summary judgment be GRANTED.  Accordingly, the claims against

---

[1]Plaintiff has withdrawn Count VI of his claim which alleges supervisory liability
by Defendant Gierke.  *Second Amended Complaint* at ¶¶57-59; *Response* [Docket #104]
at 34.

-1-

Macomb County insofar as they pertain to actions by these Defendants should be DISMISSED.  I further recommend that Defendant True's motion for summary judgment be DENIED and that claims against Defendant Macomb County as they pertain to True's alleged assault be DENIED.

## I.    FACTUAL BACKGROUND

Plaintiff Eric David Seales brings this action pursuant to 42 U.S.C.§1983 alleging that Defendants violated his civil rights through excessive and unjustified use of force; conspiracy; a policy, practice, or procedure of failing to supervise employees;  retaliation, and malicious prosecution.  *Second Amended Complaint* at ¶¶ 36-55.  Plaintiff alleges that on August 1, 2001, during his residency at the Macomb County Juvenile Youth Home ("MCYH"),[2] Defendants Fred True, Jason Stabley, Robert Whitehead, and Ted Stabley, Youth Home employees used excessive force in subduing him after he was confined for passing on a threat of sexual assault to the threat's intended recipient, another  ward. *Complaint* at ¶¶ 15-30; Docket #135-19, Exhibit 74 at 2-3.

Plaintiff alleges that Defendant True ordered him to his cell after being informed that Plaintiff had threatened another inmate.  According to Plaintiff, Defendant True entered his cell a short time later "swinging," apparently provoked by the fact that Plaintiff was repeatedly hitting or kicking various surfaces in his cell.  *Response* [Docket #104] at 3. Plaintiff states that True then punched him in the face after which he struck True in self-

---

[2] Now known as the "Macomb County Juvenile Justice Center."

defense. *Id*.  Plaintiff alleges further that True had subdued him when Jasen Stabley entered the cell.  *Id*.

Defendant True, along with Jasen Stabley and three other Defendants, Ted Stabley, Whitehead, and Hill, who came on the scene moments later, placed Plaintiff in a restraint chair.  Plaintiff alleges that after he began to spit to remove blood from his mouth, Defendants Ted Stabley and Whitehead covered his nose and mouth with a towel.  *Id*. at 4. He alleges further that Ted Stabley attempted to choke him by pulling the towel around his neck, asserting that he began to pass out before the towel was removed.  *Id.*  Plaintiff alleges that he was improperly left in the  restraint chair for several hours without adequate monitoring. *Id*.  He states that he suffered physical injuries, including a swollen face, a sore back, red marks from the handcuffs and chair straps, and multiple bruises.  *Id.* at 9.

On August 7, 2001, Defendant Whitehead filed a complaint with the Macomb County Sheriff's Department.  Plaintiff alleges that during the ensuing investigation and trial for assault and battery, Defendants Whitehead, True, and Jasen Stabley  all presented false testimony.  *Id*. at 32. A jury acquitted Plaintiff of all criminal charges in April, 2002[3]. *Complaint* at ¶¶ 31-32.  Plaintiff seeks compensatory and punitive damages, along with attorney's fees.

## II.    STANDARD OF REVIEW

Summary judgment is appropriate where "the pleadings, depositions, answers to

---

[3]The Honorable William Crouchman presided in *People v. Eric Seales,* 41B District court Case No. 01-3312.

interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R.Civ.P. 56(c).  To prevail on a motion for summary judgment, the non-moving party must show sufficient evidence to create a genuine issue of material fact. *Klepper v. First American Bank*, 916 F.2d 337, 341-42 (6th Cir. 1990).  Drawing all reasonable inferences in favor of the non-moving party, the Court must determine "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).  Entry of summary judgment is appropriate "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial."  *Celetox Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).  When the "record taken as a whole could not lead a rational trier of fact to find for the nonmoving party," there is no genuine issue of material fact, and summary judgment is appropriate.  *Simmons-Harris v. Zelman*, 234 F.3d 945, 951 (6th Cir. 2000).

Once the moving party in a summary judgment motion identifies portions of the record which demonstrate the absence of a genuine dispute over material facts, the opposing party may not then "rely on the hope that the trier of fact will disbelieve the movant's denial of a disputed fact," but must make an affirmative evidentiary showing to defeat the motion. *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1479 (6th Cir. 1989).  The non-moving party must identify specific facts in affidavits, depositions or other factual material showing

"evidence on which the jury could *reasonably* find for the plaintiff." *Anderson*, 477 U.S. at

252 (emphasis added). If, after sufficient opportunity for discovery, the non-moving party

cannot meet that burden, summary judgment is clearly proper. *Celotex Corp.*, 477 U.S. at

322-23.

## III.   ANALYSIS

### A.  Eighth Amendment Violations

Defendants maintain that Plaintiff's allegation that Defendant True, irritated by

Plaintiff's noise-making, entered his cell, striking him twice before Plaintiff swung back in

self-defense, fails as a matter of law to state a claim of constitutional magnitude. Further,

Defendants maintain that Plaintiff has not demonstrated they employed excessive force in

either placing or leaving him in the Restraint Chair. Docket #87 at 23; *Response* at 1-2.[4]

Defendants argue that their actions, including True, Jasen Stabley, Jim Hill, and Ted

Stabley's efforts to place Plaintiff in the Restraint Chair, "were taken in a good faith effort

_____

[4]Although Defendant True maintains that he sought to prevent Plaintiff from attempting to harm himself (Docket #104-6, Exhibit 5 at 74, 109) Plaintiff asserts that "[t]here could be no benefit in performing an unnecessary cell extraction of an agitated resident which was almost certain to escalate the incident and would not result in any safer replacement. The reasonable inference is that True entered to provoke a confrontation." Docket #104 at 2. After Defendants True and Jasen Stabley removed Plaintiff from his cell, Plaintiff states that upon being placed in the restraint chair, Defendants security chief Ted Stabley, and Whitehead covered his nose and mouth with a towel, causing him to become dizzy. *Id*. at 4-5. He further alleges that at one point, Defendant Ted Stabley placed the towel around his neck. *Id*. at 5. Plaintiff asserts that contrary to Defendant Macomb County's own policy, he remained in metal handcuffs for the duration of his confinement to the chair, stating further that Defendants did not comply with a regulation requiring a "Use of Restraints Record." *Id*. at 6; *Exhibit* 3 at 193.

to prevent injury to Plaintiff and others." Docket #87 at 24.

Allegations of constitutional violations against residents of a juvenile facility, like adult prisoners, generally sound under the Eighth Amendment. *Horn by Parks v. Madison County Fiscal Court,* 22 F.3d 653, 660 (6th Cir. 1994). *See also Brock v. Kenton County, KY,* 93 Fed.Appx. 793, 2004 WL 603929 (6th Cir. 2004). In order for a prisoner to establish an Eighth Amendment violation of cruel and usual punishment under § 1983, he must allege and prove an unnecessary and wanton infliction of pain, or the infliction of pain totally without penological justification. *See Rhodes v. Chapman*, 452 U.S. 337, 101 S.Ct. 2392, 69 L.Ed.2d 59 346 (1981). Eighth Amendment claims must satisfy a two-prong standard. First, the alleged wrongdoing must be "objectively harmful enough" to establish a constitutional claim (objective component). Second, the prison official must act with the requisite state of mind (subjective component). *Hudson v. McMillian*, 503 U.S. 1, 8, 112 S.Ct. 995, 117 L.Ed.2d 156 (1992), citing *Wilson v. Seiter*, 501 U.S. 294, 298, 303, 111 S.Ct. 2321, 115 L.Ed.2d 271 (1991).

The objective component is contextual and responsive to "contemporary standards of decency." *Hudson*, 503 U.S. at 8 (citing *Estelle v. Gamble*, 429 U.S. 97, 103, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976)). The Supreme Court has clearly held that "when prison officials maliciously and sadistically use force to cause harm, contemporary standards of decency are always violated." *Id.* at 9. Therefore, a prisoner need not show a significant injury. *Id.; Moore v. Holbrook*, 2 F.3d 697, 701 (6th Cir. 1993) (citing *Hudson* to conclude that the extent of injuries does not provide a basis for dismissal).

-6-

The subjective component is evaluated by "whether force was applied in a good faith effort to maintain or restore discipline or maliciously and sadistically for the very purpose of causing harm." *Whitley v. Albers*, 475 U.S. 312, 320-321, 106 S.Ct. 1078, 89 L.Ed.2d 251 (1986) , citing *Johnson v. Glick*, 481 F.2d 1028, 1033 (2nd Cir. 1973), *cert. denied sub nom, John v. Johnson*, 414 U.S. 1033, 94 S.Ct. 462, 38 L.Ed.2d 324 (1973). *See also Hudson*, 503 U.S. at 6-7 (extending *Whitley* to all cases of excessive force by prison officials).  In doing so the Court reasoned that "officials confronted with a prison disturbance must balance the threat unrest poses to inmates, prison workers, administrators, and visitors against the harm inmates may suffer if guards use force." *Hudson*, 503 U.S. at 6, 112 S.Ct. at 998; Further, "corrections officials must make their decisions 'in haste, under pressure, and frequently without the luxury of a second chance'"*Id.;Whitley*, 475 U.S., at 320, 106 S.Ct., at 1084.

The factors to be considered when weighing the conduct of prison officials are: 1) the need for the application of force; 2) the relationship between the need for force and the amount used; and 3) the extent of the injury inflicted. *Whitley*, 475 U.S. at 321.

### i. Defendant True

Plaintiff's allegation that Defendant True punched him twice in response to his noise-making and attempted to prevent the care-worker from entering his room presents a question of material fact and is therefore not subject to summary judgment.  Generally, as laid out above, individuals responsible for preserving institutional control are granted significant leeway in promoting legitimate objectives.  *Parrish v. Johnson*, 800 F.2d 600, 604 ( 6th Cir. 1986) notes that "[t]he maintenance of prison security and discipline may often require that

prisoners be subjected to physical contact which at common law would be actionable as an assault or battery and which, in retrospect, may have been excessive[,]" noting further that "the good faith use of physical force in pursuit of valid penological or institutional goals will rarely, if ever, violate the Eighth Amendment."

Defendant True's alleged assault of Plaintiff, apparently prompted by Plaintiff's earlier misbehavior as well as his pounding on various surfaces and blocking his room's entry cannot be construed to have promoted institutional security.  Further, although True states that he took such action because he reasonably believed Plaintiff's attempt to dislodge a thermostat cover was a suicide attempt, witnesses state that True swore at Plaintiff repeatedly before entering the room and "taking a swing at him."  Docket #104, Exhibit 4, Trial Transcript at  94, 96, 106.  Moreover, although True characterizes his actions as a frantic joint attempt by himself and Jasen Stabley to subdue Plaintiff, the same witnesses testified that True punched Plaintiff twice before Stabley arrived as back up.  *Id*. at 96, 107.   Likewise, *Pelfrey v. Chambers,*  43 F.3d 1034, 1037 (6th Cir. 1995), reversing a grant of summary judgment on the basis that the defendants actions did not further "any other legitimate penological or institutional objective," observed that "it would certainly appear that defendants' actions (assuming *arguendo*  that defendants committed the acts alleged in plaintiff's complaint) were designed to frighten and degrade" the prisoner.[5]

For similar reasons, Defendant True's argument that he is entitled to qualified

---

[5]Rather than a good-faith effort to maintain order, Defendant True's  assault appears to have destabilized conditions at the home by further agitating Plaintiff, placing True's fellow care-workers at peril.

immunity fails. Under *Saucier v. Katz*, 533 U.S. 194, 121 S.Ct. 2151, 150 L.Ed.2d 272 (2001), a state official is protected by qualified immunity unless the plaintiff shows (1) that the defendant violated a constitutional right, and (2) the right was clearly established to the extent that a reasonable person in the Defendant's position would know that the conduct complained of was unlawful. In *Higgason v. Stephens*, 288 F.3d 868, 876-877 (6th Cir. 2002), the Sixth Circuit set forth a three-part test to determine whether a government official is entitled to the defense of qualified immunity: (1) was there a violation of a constitutionally protected right; (2) was that right clearly established at the time; and (3) has the plaintiff alleged and shown by sufficient evidence that what the official allegedly did was objectively unreasonable?

Assuming at best that True's alleged actions represent a momentary and isolated lapse in judgment, the attack demonstrates nonetheless unreasonable behavior violating a clearly established constitutional right. Ten years ago, *Pelfrey, supra,* 43 F.3d at 1036 rejected and reversed a district court finding that "a spontaneous, isolated assault by a prison guard on an inmate is not punishment within the Eighth Amendment." *See Johnson v. Perry,* 106 Fed.Appx. 467, 469-470 (6th Cir. 2004); *Harlow v. Fitzgerald,* 457 U.S. 800, 818-19, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982). ("If the law was clearly established, the immunity defense ordinarily should fail.") Accordingly, allegations of Eighth Amendment violations with respect to True's assault of Plaintiff before receiving backup assistance from other

-9-

Defendants should proceed.[6].

### ii.  **Jasen Stabley**, **Ted Stabley, Robert Whitehead, and Jim Hill**

In contrast to True's alleged assault, the actions of his four above-named co-defendants do not rise to the level of a constitutional violation.  Significantly, Plaintiff's deposition testimony, standing alone, confirms the absence of material fact disputes as to these charges.  Docket #87, Exhibit A.

Plaintiff testified that after True struck him and he punched back,  Jasen Stabley then entered the room, telling Plaintiff to "calm down." *Id*. at 141.  Plaintiff concedes that because he "wouldn't calm down," Jasen Stabley  then called for more backup. *Id*.  Within the minute, Ted Stabley entered, telling Plaintiff to calm down and informing him that he would be handcuffed.  *Id*.  Plaintiff admits that he refused, struggling with Ted Stabley, Jasen Stabley, Whitehead, and True.  *Id*. at 142-143.  Upon being handcuffed, Plaintiff continued to struggle as Defendants secured him in the restraint chair.  *Id*. at 142-144.  He states that "someone smacked me from the back of the head and told me to calm down."  *Id*. at 154.  Although Plaintiff maintains that he spit blood as he was strapped into the chair, he concedes that "*Whitehead thought I was trying to spit on him.* [Whitehead] told someone to go get the towel and they put it over my face." [7] (emphasis added)  *Id*. at 146.  He stated further that

_____

[6]Although Defendants, including True, argue on a related note that they are subject to governmental immunity pursuant to M.C.L. 691.1407(10), they concede of course that "the Legislature has allowed specific actions against the government to stand," including claims under federal statute 42 U.S.C. §1983. Docket #87 at 15.

[7]Defendant  Ted Stabley confirmed that one of the Defendants requested a towel to cover Plaintiff's mouth, after he spit and attempted to bite the individuals placing him in the

during this time he could hear Defendant Hill urging him to "calm down." *Id*. Plaintiff states that "[s]omeone wrapped a towel around my face and it covered my nose and my mouth and I couldn't breathe . . . . then the towel slipped down around the neck." *Id*. at 152-153. However, he adds that when he stopped struggling (he alleges that he felt faint) the towel was removed. *Id*. at 153. Plaintiff estimated that during the "three to four hours" that he was restrained before his transfer to jail that various staff members checked on him at fifteen minute intervals. *Id*. at 161.

Specifically, Plaintiff premises his excessive force claims against these individuals on the fact that they did not comply with the restraint chair manufacturer's recommendation that persons placed in the chair for over an hour should be "recuffed on the sides of the chair with soft restraints" *(Response* at Exhibit 11) or MCYH's own policy of performing room checks of restrained individuals every five minutes. Docket #87, Exhibit W at 27. He alleges that his wrists were bruised as a result of Defendants' decision to keep his hands cuffed behind his back for the majority of his time in the chair.

Aside from the fact that Plaintiff admits that Jasen Stabley, Hill, Ted Stabley, and Whitehead restrained him *after* he refused to comply with their requests to calm down, the discomfort wrought by his time in handcuffs does rise to a level of constitutional magnitude.[8]

chair, denying that Defendants attempted to suffocate or choke him. Docket #88, *Exhibit D* at 81-82.

[8]In *Kostrzewa v. City of Troy*, 247 F.3d 633, 639 (6th Cir. 2001) the court found that forcing tight handcuffs on a plaintiff which resulted in injuries requiring hospital treatment stated a claim of constitutional magnitude. However, *Kostrzewa* is inapplicable to the instant

First, although allegedly, Defendants complied with neither the manufacturer's suggested use nor the institution's own policy, this failure alone does not necessarily state an Eighth Amendment violation.  *See Barber v. City of Salem, Ohio,* 953 F.2d 232, 240 (6th Cir. 1992)("[F]ailure to comply with a state regulation is not itself a constitutional violation.) Rather, Defendants' actions in restraining Plaintiff until he could be transported to an adult facility, apparently taken in a good-faith effort to restore institutional order, do not state claims of constitutional magnitude. *See Kennedy v. Doyle,* 37 Fed.Appx. 755, 756 -757 (6th Cir. 2002)(Placing the plaintiff in restraints on "numerous occasions" did not violate his Eighth Amendment rights after he continued to break the window of his prison cell after he had first been placed in restraints, stating that "physical restraints are constitutionally permissible where there is penological justification for their use.")

Likewise, Plaintiff's claim that Defendants violated his Eighth Amendment rights by placing a towel over his mouth and nose fails on the basis of his own testimony.  Although Plaintiff's expert opines that "the appropriate course of action would have been to place a [spitting] mask on him," and that "[t]he placement of a towel around Mr. Seales neck or over his head and face was inappropriate and unprofessional," Plaintiff himself concedes that Defendant Whitehead requested a towel after Plaintiff spit in his face and eyes. Docket #104 at 11.   Further Plaintiff, who previously attempted to take his own life and continued to

---

situation.  The *Kostrzewa* court specifically noted that "in this case the plaintiff has alleged in his complaint more than the mere application of handcuffs that were tight," finding that the plaintiff's injury was exacerbated by the officers' deliberately erratic driving, and their later insistence that he wear again handcuffs on the ride from the hospital where he had been treated for wrist injuries.  *Id.* at 640.

threaten other wards, acknowledged that he struggled as Defendants attempted to subdue him. Defendants split-second decision to use a towel (apparently closer at hand than a spitting mask) to prevent Plaintiff from spitting on them, taken "in haste" and "under pressure" does not state a constitutional claim.[9]

### B.  42 U.S.C. §1983 Conspiracy Claim

Defendants argue that  Plaintiff's conspiracy claim fails as a matter of law.  Docket #87 at 27; Docket #104 at 32.  Defendants dispute that Whitehead initiated a false complaint with the Sheriff Department and that Jasen Stabley "misrepresented" the incident in his statement to the Sheriff's Department.  *Id.*  Defendants also dispute Plaintiff's claim that Defendant True gave false testimony at the subsequent criminal trial, subjecting Plaintiff to prosecution.  *Id.*

Plaintiff's claim that Defendants Whitehead, Jasen Stabley, and True conspired to prosecute him by filing false reports to authorities and offering false testimony at trial stands unsupported by any evidence. "It is well-settled that conspiracy claims must be pled with some degree of specificity and that vague and conclusory allegations unsupported by material facts will not be sufficient to state a claim under § 1983." *Jackson v. Madery* 158 Fed.Appx. 656, 659 (6th Cir. 2005)(unpublished);*Gutierrez v. Lynch,* 826 F.2d 1534, 1538 (6th

---

[9]Defendant  Ted Stabley, confirming Plaintiff's statement that the towel was placed around his neck for a very short duration, states that one of the Defendants requested a towel to cover Plaintiff's mouth after he spit and attempted to bite the individuals placing him in the chair.  Consistent with Plaintiff's testimony, he also denied that Defendants attempted to suffocate or choke him. Docket #88, *Exhibit D* at 81-82.

Cir.1987).

First, all witnesses agree Defendant Whitehead came on the scene after Defendant True allegedly assaulted Plaintiff. Further, Defendant Whitehead testified at trial that he was independently motivated to press charges because Plaintiff assaulted him as he struggled to place him in the restraint chair[10]. Docket #110, Exhibit 4 at 56. Next, although Plaintiff's alleges that Whitehead, True and Jasen Stabley all lied in a concerted effort to convict him, Defendant True's testimony that Jasen Stabley was with him from the time he attempted to enter Plaintiff's cell diverges somewhat with Stabley's position that he came to True's aid after seeing that True was encountering difficulty in subduing Plaintiff. *Id.* at 25, 41-42. The fact that True and Jasen Stabley offered slightly *differing* accounts of critical events undermines rather than supports Plaintiff's allegations that they engaged in a conspiracy to violate his civil rights. Defendants' moderately divergent testimony, coupled with the absence of any evidence that they conspired to prosecute Plaintiff, defeats the conspiracy claim. The mere drumbeat repetition of words such as 'arbitrary,' 'capricious,' and 'conspiracy' do not suffice to turn lawful conduct into a violation of federal rights, and courts will not look with favor on complaints which, trading on mere conclusory charges, fail to set out the specifics of a tenable claim." *Culebras Enterprises Corp. v. Rivera Rios,* 813 F.2d 506 (1st Cir. 1987). Although the Sixth Circuit has stated that "[e]xpress agreement among all the conspirators is not necessary to find the existence of a civil conspiracy. . . . All that

---

[10]Defendant Whitehead testified that he sustained a cut to his left wrist and that Plaintiff spit into his face and eyes, requiring him to receive a tetanus shot and a series of Hepatitis B. *Id.*

must be shown is that there was a single plan," here, Plaintiff's failure to show the existence

of a plan defeats this claim.  *Memphis, Tennessee Area Local, American Postal Workers*

*Union, AFL-CIO v. City of Memphis,* 361 F.3d 898, 905 (6th Cir. 2004)

### C.  Municipal Liability

Defendant MCYH disputes Plaintiff's assertion that it "maintained a culture and

climate of deliberate indifference to the use of excessive force by staff." Docket #87 at 28;

*Response* at 33.   Defendant disputes the premise that the acts and omissions of Defendants

True, Jasen Stabley, Ted Stabley, and Whitehead imply that Defendant MCYH's policies with

regard to use of force in general and the use of the restraint chair were "inadequate to protect

Plaintiff's rights." Docket #87 at 28; Docket #104 at 32.   Defendant maintains further that

this claim fails on the basis that Plaintiff has not established a causal link between the

municipal policy or custom and the alleged constitutional deprivation.  *Id.*

The Supreme Court has held that "a municipality cannot be held liable under § 1983

on a *respondeat superior* theory," and that for there to be municipal liability, the alleged

unconstitutional violation must implement or execute a policy statement, ordinance,

regulation or decision officially adopted and promulgated by that body's officers, or be taken

pursuant to governmental custom.  *Monell v. Department of Social Services,* 436 U.S. 658,

690-692, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978).  The *Monell* holding applies to civil rights

claims brought against public juvenile facilities.  *Smith v. District of Columbia,* 413 F.3d 86

(D.C. Cir. 2005).[11]  In *Johnson v. City of Detroit*, 944 F.Supp. 586, 598 (E.D. Mich. 1996), the Court explained, "The requirement of an official policy distinguishes the acts of the employee from those of the municipality, ensuring that the municipality is held responsible only for the latter."

Nevertheless, a municipal policy need not be formal or written to bring § 1983 into play.  It can be found in "a widespread practice that, although not authorized by written law or express municipal policy, is 'so permanent and well settled as to constitute 'custom or usage' with the force of law.'" *City of St. Louis v. Praprotnik*, 485 U.S. 112, 127, 108 S.Ct. 915, 99 L.Ed.2d 107 (1988)(citations omitted).  In addition, § 1983 liability can be based on a policy of inadequate training or supervision, but "only where the failure to train amounts to deliberate indifference to the rights of persons with whom the police come into contact." *City of Canton v. Harris*, 489 U.S. 378, 388, 109 S.Ct. 1197, 103 L.Ed.2d 412 (1989).

---

[11]The Court has found that Defendants Jasen Stabley, Ted Stabley, Hill, or Whitehead's actions did not rise to the level of a constitutional violation.  Therefore the constitutionality of MCYH policy or custom as it pertains to these Defendants' use of the Restraint Chair is moot.  *Schroder v. City of Fort Thomas*, 412 F.3d 724, 727 (6th Cir. 2005).  In the absence of a causal connection between the unconstitutional policy and the actual violation (in this case, no violation) municipal liability cannot be considered.  "If a person has suffered no constitutional injury at the hands of the individual . . . the fact that the departmental regulations might have *authorized* the use of constitutionally excessive force is quite beside the point."  *Doe v. Sullivan County, Tenn.*,  956 F.2d 545, 553 (6th Cir. 1992).  However, having found that Defendant True's alleged assault states a constitutional violation, the Court has considered the restraint chair records to the extent that they might have demonstrated pervasive institutional shortcomings contributing to Defendant True's actions.  However, Plaintiff has demonstrated only one incident prior to August 1, 2001 where a ward documented injuries allegedly as a result of restraint chair placement. Docket #111-5, Exhibit 45 at 5-6.

Further, in *Memphis, Tennessee Area Local, American Postal Workers Union*,  361 F.3d  at 902-903 (6th Cir. 2004) the court found that "[a] municipal 'custom' may be established by proof of the knowledge of policymaking officials and their acquiescence in the established practice." *See also  Fletcher v. O'Donnell*, 867 F.2d 791,792-794 (3rd Cir. 1989).  If it is shown that the city "knew or reasonably should have known" that the actions of its police officers were unlawful, this would support a claim that the city was "deliberately indifferent" to the rights of Plaintiffs, which in turn "can be properly thought of as a city policy or custom that is actionable under § 1983." *Memphis* at 904.

Having found that the allegations of assault by Defendant True present a question of material fact, the Court must determine whether MCYH's policies (written or unwritten) were a moving force in the assault on Plaintiff.  Plaintiff presents a plethora of material in a quest to  attribute the underlying constitutional violation by individual Defendants to the institution's policies, a large portion of which is only tangentially related to the present cause of action.   For example, in and of itself, the State's Bureau of Regulatory Service's finding that the institution did not routinely issue flip-flops to residents entering the shower or that the facility's roof leak created a "mildew smell" does nothing to further Plaintiff's case. Docket #105-2, Exhibit 26 at 13.

Nonetheless, these reports and others of institutional shortcomings, coupled with documentation of inappropriate staff behavior suggests a general culture of malfeasance, acquiesced to by institutional decision makers.   Further, a portion of the documented shortcomings reflect the actions of a poorly trained staff.   MCYH has been cited for a

-17-

number of staff deficiencies including employees who curse, ridicule and "playfully" punch wards. *Id.* Exhibit 26 at 9-10.  On another occasion, the State's Family Independent Agency found  noncompliance after a ward soiled his sheet upon staff member's refusal to let him use the restroom.  *Id*. 105-5 Exhibit 30 at 18.[12]  The director of the Office of Children and Adult Licensing found similarly that 70 out of 80 employees interviewed had been insufficiently trained, stating that "major training gaps" had been documented to "at least as far back as 2001." Docket #105-19, Exhibit 50.

Further, a causal connection exists between the facility's failure to train and supervise its employees and the alleged constitutional violations by Defendant True.   A report made after the August 1, 2001 incident shows that Defendant True inflicted inappropriately severe discipline on an unruly ward resulting in his termination Docket #105-3, Exhibit 29 at 9-14. Although improprieties committed subsequent to the episode at hand cannot be used directly to establish the facility's indifference to Plaintiff's rights in the earlier incident, I note that it supports not only the premise that MCYH staff was woefully undertrained, but shows that the facility acquiesced to behavior leading to constitutional violations.  Significantly, in the two years before Plaintiff's August 1, 2001 alleged assault,  True's training possibly consisted of only one and a half hours in December, 1999 and June, 2000 "policy and procedure" classes, along with a one and a half hour July, 2000 "course" studying "risk management." Docket # 105-15, Exhibit 46.  In and of itself , this demonstrates that MCYH's

---

[12]According to a Detroit News article published in April, 2001, only four of the facility's 98 employees had completed the  state requirement that they complete 25 hours of training annually to work with children.  Docket #105-19, Exhibit 50.

training of Defendant True fell dramatically short of the State's licensing requirements and further creates a question of fact as to the casual connection between his lack of training and his ill-advised assault on Plaintiff.[13]   Docket # 105-15, Exhibit 46.  *See Memphis, Tennessee Area Local, American Postal Workers Union*, 361 F.3d at 902-903. Summary judgment must therefore be denied to Defendant Macomb County regarding its liability for the allegations against Defendant True.

### D. Retaliation

Defendants argue that despite Plaintiff's claim that Defendant Whitehead filed a retaliatory complaint against him on August 7, 2001 after he complained to his mother about his treatment at the youth home, he  cannot demonstrate that complaining to his mother was a constitutionally protected activity. Docket #87 at 32.  Defendants also  maintain that charges were pressed against Plaintiff for non-retaliatory reasons. *Id*.

A retaliation claim requires proof that: "(1) prisoner engaged in protected conduct; (2) adverse action was taken against prisoner that would deter person of ordinary firmness from continuing to engage in that conduct; and (3) there is causal connection between first and second elements, i.e. adverse action was motivated at least in part by protected conduct." *Brown v. Crowley,* 312 F.3d 782, 787 (6th Cir. 2002);*Thaddeus-X v. Blatter,* 175 F.3d 378,

---

[13]Defendant True submits a handwritten document to show that he spent 41.5 hours in training in 1999.  Docket #105-16, Exhibit 46 at 8.  However, at the August 25, 2006 hearing, Plaintiff questioned the validity of this document, pointing out that it stands at odds with the manner all other staff training records were kept during the same period.  In any case, during the year 2000, Defendant True completed only a small fraction of the training hours required by the state.

394 (6th Cir. 1999). However, "if the defendant can show that he would have taken the same action in the absence of the protected activity, he is entitled to prevail on summary judgment." *Thaddeus-X,* 175 F.3d at 399.

Even if the Court construes this incident in the light most favorable to Plaintiff, and assumes, *arguendo,* that the first prong of Thaddeus-X has been met by Whitehead's threats of prosecution if Plaintiff engaged in protected conduct, the claim of retaliation still fails as a matter of law. Although Plaintiff alleges that Whitehead filed a false report against him after he informed his mother that he had been abused, the Court need not determine the veracity of that statement based on overwhelming evidence that Whitehead would have taken the same action in the absence of protected activity.

First, Plaintiff does not dispute that Whitehead sustained injuries while struggling to place him in the restraint chair. Ted Stabley testified that Whitehead attempted to calm Plaintiff down when he began thrashing, spitting, and attempting to bite Whitehead. Docket #88, *Exhibit D* at 81-82. Whitehead testified at trial that he required tetanus and Hepatitis B series treatments after Plaintiff cut his arm and spit in his eyes and face. Docket #110 Exhibit 4 at 56. Although these facts alone justify pressing charges, the record indicates that Plaintiff (who had recently pled guilty to three aggravated assaults against his mother, stepfather, and uncle) had been disciplined repeatedly during his stay at MCYH for threatening to attack the family of a fellow ward, using racial epithets, passing along threats

-20-

of sexual assault, and attempting to kill himself.[14] Docket #88, *Exhibit C* at 49. Defendant

Whitehead's affidavit states that in light of Plaintiff's behavior he would have pressed

charges regardless of whether Plaintiff told others of the incident. *Id.* at Exhibit G.

Whitehead's statement presents an indisputably non-retaliatory reason for filing a

complaint.[15] Whether his pursuit of charges was inspired by either his unselfish concern for

the public at large or a black-hearted desire for vengeance (or some combination of the two)

is beside the point. *See Hartman v. Moore*, — U.S. —, 126 S.Ct. 1695, 1704, 164 L.Ed.2d

441 (2006) ("It may be dishonorable to act with an unconstitutional motive and perhaps in

some instances be unlawful, but action colored by some degree of bad motive does not

amount to a constitutional tort if that action would have been taken anyway.")

### E. Malicious Prosecution

Defendants True and Jasen Stabley dispute Plaintiff's assertion that they testified

falsely as to the events of August 1, 2001, asserting that Plaintiff's claim that "they silently

conceded to Whitehead's prosecution" stands unsupported by evidence. Docket #87 at 34.

---

[14]Immediately following the incident, Defendant Whitehead obtained a court order to transfer Plaintiff to the Macomb County Sheriff's Department. Although a move from a juvenile facility to an adult jail could be construed as an adverse action under the second prong of *Thaddeus-X*, Plaintiff's disruptive behavior at the youth home provides ample non-retaliatory reasons for the transfer. Further, Plaintiff's allegation that Whitehead threatened him with retaliatory action stands at odds with the fact that Whitehead requested the court order for a transfer within minutes of the incident. *Trial Transcript* at 58-59. Additionally, the fact that Whitehead appears to have spoken with the Sheriff's Deputy about filing criminal charges soon after requesting the court order undermines Plaintiff's claim that the complaint was retaliatory in nature. *Id.*

[15]In addition, given Plaintiff's predilection for hurting himself and others, refraining from filing a complaint against Plaintiff may have resulted in harm to other wards and staff.

-21-

Defendants argue that because probable cause justified Plaintiff's arrest and prosecution, that the claim of malicious prosecution fails. *Id.*

In demonstrating malicious prosecution, "it is clear that a plaintiff must show, at a minimum, that there was no probable cause to justify his arrest and prosecution." *Thacker v. City of Columbus* 328 F.3d 244, *259 (6th Cir. 2003). The Supreme Court held recently that in a civil rights claim of retaliatory prosecution, like its common law "close cousin," malicious prosecution, the absence of probable cause "must be pleaded and proven." *Hartman*, *supra*, 126 S.Ct. 1695, 1702, 1707.

Accordingly, Plaintiff's allegations of malicious prosecution, factually interwoven with the retaliation claim, founder on his failure to show the absence of probable cause. First, assuming for the sake of argument that Whitehead, Jasen Stabley, and True deliberately falsified testimony in an attempt to have Plaintiff wrongfully convicted, the decision to prosecute Plaintiff (premised on probable cause) was the prosecutor's - not Defendants'. Second, Plaintiff's argument also fails to the extent that it can be construed to indicate that *but for* Whitehead's false statements to authorities, probable cause could not have been established. As discussed in section **D**., Defendant Whitehead has presented abundant and undisputed non-retaliatory reasons for pressing charges against Plaintiff. Thus, assuming *arguendo* that Whitehead, Jasen Stabley, and True deliberately falsified testimony in an attempt to have Plaintiff wrongfully convicted, probable cause existed independent of the alleged falsehoods, thus defeating Plaintiff's claim. *Darrah v. City of Oak Park*, 255 F.3d

-22-

301 (6th Cir. 2001).[16]

### IV. CONCLUSION

I recommend, for the reasons stated above that Jasen Stabley, Ted Stabley, Hill, Gierke, and Whitehead's motion for summary judgment be GRANTED. Accordingly, the claims against Macomb County insofar as it pertains to actions by these Defendants should be DISMISSED. I further recommend that Defendant True's motion for summary judgment should be DENIED and that Defendant Macomb County's Motion for Summary Judgment be DENIED as it pertains to True's alleged assault.

Any objections to this Report and Recommendation must be filed within ten (10) days of service of a copy hereof as provided for in 28 U.S.C. §636(b)(1) and E.D. Mich. LR 72.1(d)(2). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn,* 474 U.S. 140, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985); *Howard v. Secretary of HHS,* 932 F.2d 505 (6th Cir. 1991); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981). Filing of objections which raise some issues but fail to raise others with specificity will not preserve all the objections a party might have to this Report and Recommendation. *Willis v. Sullivan,* 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231,* 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this Magistrate Judge.

---

[16]Plaintiff notes that he was acquitted of all charges. However, the fact that the jury found that the charges were not proven beyond a reasonable doubt, in and of itself, does not establish the absence of probable cause.

Within ten (10) days of service of any objecting party's timely filed objections, the opposing party may file a response. The response shall be not more than twenty (20) pages in length unless by motion and order such page limit is extended by the court. The response shall address specifically, and in the same order raised, each issue contained within the objections.


S/R. Steven Whalen
R. STEVEN WHALEN
UNITED STATES MAGISTRATE JUDGE

Dated: August 29, 2006

## CERTIFICATE OF SERVICE

The undersigned certifies that a copy of the foregoing order was served on the attorneys and/or parties of record by electronic means or U.S. Mail on August 29, 2006.


S/G. Wilson
Judicial Assistant